## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

WAYNE RESPER,                               *

Plaintiff                                   *

v                                           *           Civil Action No. PJM-18-1406

WEXFORD HEALTH SOURCES, INC.,               *
WARDEN RICHARD GRAHAM, JR.,
TERRI DAVIS,                                *
UNNAMED NURSE MANAGER,
                                            *
Defendants

***

### MEMORANDUM OPINION

Plaintiff Wayne Resper, currently incarcerated at North Branch Correctional Institution ("NBCI") in Cumberland, Maryland, has filed a civil action against Wexford Medical Services ("Wexford"), Terri Davis, "Unnamed Nurse Manager" (collectively the "Medical Defendants") and Warden Richard Graham, Jr. In his Complaint, Resper asserts a violation of his constitutional rights arising from Defendants' alleged failure to treat his pain properly while he was housed at Western Correctional Institution ("WCI") in Cumberland, Maryland. Pending before the Court is the Medical Defendants' Motion to Dismiss, or Alternatively, for Summary Judgment, as supplemented, which is fully briefed (ECF No. 14 and 19) and Warden Graham's Response to Order to Show Cause. ECF No. 5.

Resper sought and was granted numerous extensions of time to respond to the dispositive motion. While the motions were pending Resper was moved between prisons resulting in his mailing documents to the Court for safekeeping and his being separated from his paperwork for several months which resulted in a lengthy delay to the resolution of this case. *See e.g.* ECF Nos.

16-18, 23, 25, 27, 30-43. On April 17, 2020, the court entered an Order granting Resper's Motions for Extension of Time and directing that he respond to Defendant's dispositive motion on or before June 29, 2020. ECF No. 43. He was advised that no further extensions would be granted. *Id.* In September of 2020, he advised the Court that he was again transferred to another facility. ECF No. 46. To date, he has not responded to Defendants' dispositive motion.

Upon review of the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Medical Defendants' Motion, construed as a Motion for Summary Judgment, IS GRANTED and Plaintiff's Complaint against Warden Graham IS DISMISSED.

## BACKGROUND

In his Complaint, as amended, Resper alleges that on April 29, 2018, he was found with eleven doses of Neurontin and four tablets of Tramadol/Ultram which were prescribed to treat Resper's nerve pain. ECF No. 1, pp. 2-3. Plaintiff advised custody staff that he had received some of the medication that evening, and he had purchased some from other inmates in order to manage his pain when the provided medication wore off. *Id.*, p. 3.

The following morning, Resper was not provided "pain or nerve medication." *Id.*, p. 3. He states that a few days earlier, he was told that the pharmacy was out of Tramadol/Ultram and they were waiting for more. *Id.* Later that evening, Resper was again not provided Tramadol/Ultram and was told by an unidentified medication technician that all his medications had been stopped by the "nurse manager." *Id.*, p. 3.

Resper filed a sick call slip and emergency request for administrative remedy asking to be provided pain/nerve medication, but his request was not answered. ECF No. 1, pp. 3-4.

2

Resper states that "[w]hile it has been suggested that the medications are 'watch take,' it is largely optional because [his] primary interest is pain management until the next provision of pain/nerve medication." ECF No. 1, p. 4. Resper explains that he immediately takes his morning dose of medication but in the evening he delays his dose until after midnight when his medication has worn off. *Id.* Resper explained to medical personnel that since medication is only administered twice a day he "sought to manage his pain by supplementing through purchases and delaying evening doses otherwise, [he] would simply not be able to sleep or withstand [the pain from his condition]". *Id.*, p. 4. He further explains that Neurontin is only effective for four to five hours and therefore he needs a dose between the provided doses given to him. *Id.*, p. 4. He also claims that Ultram/Tramadol lasts between 14 and 16 hours and as such he needs a supplemental dose to "carry" him to the next dose which he is only provided in the morning. *Id.*

Resper states that he is not being provided pain/nerve mediation because it was stopped by the nurse manager. ECF No. 1, p. 5. Resper further states that WCI does not have an onsite physician to whom he can appeal to have his medication restored. *Id.*

In his Amended Complaint, Resper alleges that Terry Davis refused to renew and prescribe Plaintiff's blood thinner, Plavix, to treat deep vein thrombosis (DVT). ECF No. 12, p. 1; ECF No. 12-1, p. 1. As a result, Resper suffered pain and swelling in his right leg and foot. ECF No. 12, p. 1. He further alleges that Defendants failed to refer him to a physician and to a pain management specialist for assessment and treatment. ECF No. 12-1, p. 2. Additionally, he claims that Defendants failed to assess him or have him assessed so that he could be provided adequate pain management and also failed to respond to his requests for medical care regarding his acute pain and swelling in his leg. *Id.*, pp. 2-3.

Resper's undisputed medical records demonstrate that he has a medical history of DVT, gastroesophageal reflux, microcytosis and hypochromia, bilateral knee pain, and chronic ulcerated statis dermatitis. ECF No. 14-4 (medical records).

In regard to Resper's allegations that he did not receive Plavix, the record evidence shows that he had a valid prescription for Plavix from October 6, 2017 through October of 2018, but for unknown reasons did not receive the medication from March to July of 2018. ECF No. 19-3, pp. 3, 8, 37-43, 83, 91, 97, 101, 115, 121. (additional medical records). Nevertheless, Resper did not submit any sick calls slips from March 1, 2018 through August 9, 2018, complaining that he had not received Plavix during that period of time. *Id.*, pp. 58-82. Resper does not explain why he did not ask for his keep on person prescription of Plavix during pill call or why he failed to voice concerns regarding the lack of Plavix when he was seen by medical staff.

On January 21, 2018, NP Clark examined Resper and renewed his prescription for Plavix until May 21, 2018. ECF No. 19-3, pp. 4-5. He received Plavix in February 2018. *Id.*, p. 91.

On March 3, 2018, NP Clark evaluated Resper at provider sick call. ECF No. 19-3, pp. 13-15. He was referred to the regional medical director. Dr. Getachew saw Resper via telemedicine on March 8, 2018. *Id.*, pp. 16-18. It was noted that Resper was on Plavix and Resper did not advise Dr. Getachew that he had not received Plavix. *Id.* At that time of exam, Resper had a non-healing wound on the medical distal left leg which measured 2 x .8 cm. with no necrosis or cellulitis and small drainage. *Id.* Resper had been seen by a wound care specialist on November 27, 2017 who recommended vascular studies, but the results of the studies were not available. *Id.* As such, Resper was scheduled to return to Dr. Getachew the following week so the studies could be reviewed. Additional lab work was ordered and Dr. Getachew assessed Resper as having chronic venous stasis ulcer. *Id.*

4

Dr. Getachew again evaluated Resper on March 27, 2018, via telemedicine. ECF No. 19-3, pp. 19-21. Resper expressed frustration about his non healing leg wound and chronic leg pain. *Id.* Resper had lower extremity swelling that extended to the calf and a chronic non healing wound on the left lower leg. *Id.* Dr. Getachew discussed Resper's condition with a radiologist who recommended an MRI with contrast: Dr. Getachew submitted a request for consult for the MRI of the lower leg, abdomen and pelvis. Resper did not report to Dr. Getachew that he had not received Plavix. *Id.*

On April 2, 2018, Resper was seen by Terry Davis, P.A. ECF No. 19-3, pp. 22-24. It was noted that ankle brachial indexes were to be obtained and lab work was ordered. Additionally, Resper was educated regarding peripheral vascular disease and the importance of seeking medical attention immediately if he experienced severe pain and the inability to move his toes. *Id.* Davis renewed his prescription for Plavix. *Id.*, pp. 25-26.

On April 30, 2018, Davis discontinued Resper's prescriptions of Neurontin and Tramadol because he had been found hoarding the medication.[1] ECF No. 14-4, pp. 3-4. He was prescribed Naprosyn (a nonsteroidal anti-inflammatory) and Cilostazol (a medication used to improve symptoms of blood flow problems in the legs and which decreases muscle pain). *Id.* The non-formulary request for Cilostazol was approved on May 4, 2018. *Id.*, pp. 5-6.

On May 1, 2018, Resper submitted a sick call slip asking for toenail clippers. ECF No. 14-4, p. 7. The following day he filed a sick call slip asking to renew his prescriptions for Neurontin and Tramadol. *Id.*, p. 8. On May 3, he filed a sick call slip asking to renew his prescriptions for Reguloid, Vitamin E lotion, and A&D ointment. *Id.*, p. 9.

---

[1] She specifically denies discontinuing Resper's Plavix prescription. ECF No. 14-5. As noted the medical records indicate he had an active Plavix prescription at all relevant times.

Nurse Diaz evaluated Resper on May 4, 2018 at nurse sick call. ECF No. 14-4, pp. 10-11. She explained to Resper that his prescriptions for Neurontin and Tramadol were discontinued due to hoarding the medications. *Id.* He was also advised that he was not allowed nail clippers and was referred to Dr. Yahya for nail care. *Id.* He was also reminded of the procedure to renew medications. *Id.*

Plaintiff filed a sick call slip on May 6, 2018, complaining of leg pain. ECF No. 14-4, p. 12. He was seen by RN Kleptich at nurse sick call on May 8, 2018 and was advised that Cilostazol was prescribed expressly to treat the left leg claudication. *Id.*, pp. 13-14.

Nurse Practitioner Self evaluated Resper on May 22, 2018, to follow up on his complaints regarding no pulse in the left foot. ECF No. 14-4, pp. 15-16. Resper's left pedal and post tibial pulses were present but diminished. *Id.*

On June 2, 2018, NP McLaughlin conducted Resper's annual physical examination. ECF No. 14-4, pp. 17-23. The exam was generally unremarkable other than dermatitis to the left lower extremity and heel. *Id.* Resper's prescriptions for Colace, Triamcinolone Acetonide, Vitec, Plavix, Tinactin, A&D ointment, Hydrocil, and Cymbalta, were renewed. *Id.* Resper did not indicate that he had not received Plavix. *Id.*

Resper submitted a sick call slip on June 6, 2018, seeking dental care. ECF No. 14-4, p. 24.

On June 9, 2018, Resper was seen by NP Clark at sick call regarding his complaints of leg pain. ECF No. 14-4, pp. 25-27. Resper stated that he discontinued taking Cymbalta because it upset his stomach and asked to be prescribed Lyrica. *Id.* He was referred to the regional medical director. *Id.* He did not report that he had not been receiving Plavix. *Id.*

6

Nurse Diaz saw Resper on June 16, 2018 for wound care. ECF No. 14-4, p. 28.  During the meeting, Resper was argumentative and did not want his wound cleaned; instead insisting on wrapping the bandage himself. *Id.*

Asresahegn Getachew, M.D., examined Resper on June 21, 2018, via telemedicine. ECF No. 14-4, pp. 29-32.  Resper complained of pain and swelling in his legs.  Dr. Getachew recommended Resper be provided Jobst stockings as Resper had been placing tight bandages on his leg ulcers which affected the blood supply to his feet. *Id.*  Resper's Doppler studies and ankle brachial indexes were normal. *Id.*  Dr. Getachew recommended Resper be seen by a wound care specialist, noted his hoarding of pain medication, and prescribed nortriptyline for pain relief. *Id.* Resper did not report the failure to receive Plavix. *Id.*

NP Clark evaluated Resper on July 22, 2018 in the chronic care clinic. ECF No. 19-3, pp. 51-54. His DVT was described as stable. His chronic venous stasis and pain were noted as well as the hoarding of Neurontin and Tramadol. *Id.* Resper requested medication to treat his allergy symptoms. Examination was unremarkable except for decreased pedal pulses in the right leg, none in the left and edema and ulceration of the left leg. He was referred to the regional medical director. *Id.* Resper did not report to Clark the failure to be provided Plavix. *Id.*

Dr. Getachew evaluated Resper on August 11, 2018 and noted that the wound care specialist recommended hydro gel for a skin barrier, calamine wrap of the lower extremities, and compression stockings for both legs. ECF No. 19-3, pp. 55-57.  Dr. Getachew approved the implementation of the care plan. *Id.* Resper complained of side effects from Nortriptyline and Dr. Getachew referred him to the clinical pharmacist for recommendations for pain management.

## DISCUSSION

The Medical Defendants seek dismissal of the Complaint as amended under Federal Rule of Civil Procedure 12(b)(6) or summary judgment under Rule 56. They argue that: (1) Resper has improperly split his claims; (2) failed to state facts sufficient to establish a 42 U.S.C. § 1983 claim; (3) Wexford should be dismissed as there is no respondeat superior liability; (4) Resper's claims of negligence are not judicially actionable; (5) Resper cannot produce evidence to show deliberate indifference on the part of the Medical Defendants; (6) Resper's claims do not support punitive damages; and (7) Resper is not entitled to injunctive relief.[2]  In his response to the Court's order to Show Cause, Warden Graham states that he did not personally participate in the alleged wrongdoing, Resper has failed to demonstrate deliberate indifference to his medical need, and Resper is not entitled to injunctive relief. ECF No. 5.

### A.    Legal Standards

Medical Defendants filed their Motion as a Motion to Dismiss or Alternatively, for Summary Judgment.  To defeat a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Legal conclusions or conclusory statements do not suffice. *Id.*  The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual

---

[2] Resper's request for injunctive relief is identical to the motion filed and denied in *Resper v. Wexford Health Sources, Inc., et al.*, Civil Action No. PJM-17-2014, ECF 47,  Additionally, for the reasons that follow, Resper cannot demonstrate a likelihood of success on the merits and is therefore not entitled to injunctive relief. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

8

allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

Typically, when deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers only the complaint and any attached documents "integral to the complaint." *Sec'y of State for Defense v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Rule 12(d) requires courts to treat such a motion as a motion for summary judgment where matters outside the pleadings are considered and not excluded. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some notice that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment; and (2) the nonmoving party must be afforded "a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (citation omitted).

Here, the notice requirement has been satisfied by the title of Defendants' Motion. To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d) explaining why "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d); *see Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244-45 (4th Cir. 2002). Resper has not filed an affidavit or declaration under Rule 56(d) or otherwise stated a specific need for discovery. Therefore, on the issues for which consideration of exhibits is required, the Court will construe the Motion as seeking summary judgment.

Under Federal Rule of Civil Procedure 56, the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the

moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248-49.

### B.  Claim Splitting

When Resper filed this case he was already litigating claims regarding the alleged denial of medical care relative to the treatment of his DVT and leg wounds, including his allegations that he was not referred to proper specialist and was not provided appropriate medication to treat his pain or underlying condition. *Resper v. Wexford Health Sources, Inc., et al.*, Civil Action No. PJM-17-2014, ECF 47 (Motion for Temporary Restraining Order, denied at ECF 63). Defendants argue that this case must be dismissed to the extent that it alleges claims identical to those raised in Civil Action No. PJM-17-2014. The Court agrees.

Litigants are generally not permitted to pursue the same claim in two simultaneously filed cases. "The rule against claim splitting 'prohibits a plaintiff from prosecuting its case piecemeal and requires that all claims arising out of a single wrong be presented in one action.'" *Lee v. Norfolk S. Ry. Co.*, 802 F.3d 626, 635 (4th Cir. 2015), quoting *Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 273 Fed.Appx. 256, 265 (4th Cir. 2008). "In a claim splitting case, as with the traditional res judicata analysis, the second suit will be barred if the claim involves the

same parties or their privies and 'arises out of the same transaction or series of transactions' as the first claim." *Sensormatic*, 452 F. Supp.2d 621, 626 (D. Md. 2006), *aff'd*, 273 F.App'x 256 (4th Cir. 2008) citing *Trustmark Insur. Co. v. ESLU, Inc.,* 299 F.3d 1265, 1269–70 (11th Cir. 2002). "[W]hen a suit is pending in federal court, a plaintiff has no right to assert another action 'on the same subject in the same court, against the same defendant at the same time.'" *Sensormatic*, 452 F. Supp.2d at 626 quoting *Curtis v. Citibank, N.A.,* 226 F.3d 133, 138–39 (2nd Cir. 2000).

"This defense against claim-splitting, however, can be relinquished by a defendant either explicitly or implicitly." *Lee v. Norfolk S. Ry. Co.*, 187 F. Supp.3d 623, 629 (W.D.N.C.), *aff'd*, 670 F. App'x 777 (4th Cir. 2016) (ultimately holding Defendants had waived the claim-splitting defense). "The Fourth Circuit has specifically prohibited a 'wait and see' strategy." *Id.* at 630, citing *Lee v. Norfolk S. Ry. Co.*, 802 F.3d 626, 636 (4th Cir. 2015) (party with knowledge of split claim litigation must promptly raise the issue "while both proceedings are pending"). Defendants in this case have not waived the defense as it was raised in the initial response to the Complaint and prior to Civil Action No. PJM-17-2014's dismissal.

"When determining whether the second suit duplicates the first, the court considers (1) whether the second suit 'arises out of the same operative facts,' and (2) whether the 'interests of judicial economy and avoiding vexatious litigation outweigh the plaintiff's interest in bringing the second suit.'" *Southard v. Wicomico County Bd. Of Educ.*, No. SAG-15-61, 2015 WL 4993721 (D. Md. Aug. 20, 2015) (quoting *Jenkins v. Gaylord Entm't Co.*, 840 F. Supp.2d 873, 883 (D. Md. 2012). If the second suit duplicates the first, the court "may stay the second suit, dismiss it without prejudice, or consolidate the two actions." *Hare v. Opryland Hosp., LLC*, No. DKC–11–1439, 2011 WL 6153128, at *2, n. 2 (D. Md. Dec. 9, 2011) (citing *Curtis*, 226 F.3d at 139).

11

Resper's effort to initiate a separate legal proceeding involving the same or related parties and, presumably, related claims amounts to claim splitting. Resper's complaint is subject to dismissal in so far as it raises claims regarding denial of access to medical care for his DVT and leg ulcers. Alternatively, even if the complaint is not subject to dismissal on this basis, as discussed *infra* there is no viable Eighth Amendment claim.

### C. Warden Graham and Wexford

In the Maryland prison system, inmate medical care is provided by privately contracted medical care providers. ECF No. 5-2, p. 1, ¶ 2. There are no allegations and no facts supporting the claim that Warden Graham, who is not a licensed health care provider, had any personal involvement in the provision of medical care to Resper or any other inmate. *Id.* In a declaration, Graham states, without dispute, that he has no authority to make decisions relating to an inmate's medical care or to order the medical staff to prescribe any particular medication or perform any particular medical procedure. *Id.*

It is firmly established that the doctrine of vicarious liability, or *respondeat superior*, does not apply to § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (holding that there is no *respondeat superior* liability under § 1983). Particularly where Warden Graham was not the supervisor of any of the medical personnel, he can be found liable pursuant to 42 U.S.C. § 1983 only if he participated personally in the deprivation of constitutional rights. *See Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001). Warden Graham did not have any personal involvement in providing medical care to Resper or even in the decision whether to allow Resper to see a medical provider. To the extent that Warden Graham played any role in the review of Resper's ARPs relating to his medical care, such involvement does not amount to sufficient personal participation in the denial of medical care to support liability under § 1983. Rather,

12

correctional personnel may rely on the judgments of medical providers on the appropriate medical treatment to provide. *Miltier v. Beorn*, 896 F.2d 848, 855 (4th Cir. 1990).

Wexford may also not be held liable under a theory of *respondeat superior*. A private corporation is not liable under § 1983 for actions allegedly committed by its employees when such liability is predicated solely upon a theory of *respondeat superior*. *See Austin v. Paramount Parks, Inc.,* 195 F.3d 715, 727-28 (4th Cir. 1999); *Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982); *Clark v. Maryland Dep't of Public Safety and Correctional Services,* 316 Fed. Appx. 279, 282 (4th Cir. 2009).

### D. Eighth Amendment

Resper asserts a violation of the Eighth Amendment for deliberate indifference to his health based on the failure to provide adequate analgesic medication, the failure to provide Plavix, and failure to refer him to a pain management specialist. The Eighth Amendment protects prison inmates from "cruel and unusual punishments." U.S. Const. amend. VIII. In order to state an Eighth Amendment claim arising from inadequate medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble,* 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Iko v. Shreve,* 535 F.3d 225, 241 (4th Cir. 2008). Objectively, the medical condition at issue must be serious. *Hudson v. McMillan,* 503 U.S. 1, 9 (1992). A medical condition is serious when it is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko,* 535 F.3d at 241 (citation omitted).

As for the subjective component, "[a]n official is deliberately indifferent to an inmate's serious medical needs only when he or she subjectively knows of and disregards an excessive risk to inmate health or safety." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "[I]t is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Id.* (citations omitted). "[M]any acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Id.* Thus, "[d]eliberate indifference is more than mere negligence, but less than acts or omissions done for the very purpose of causing harm or with knowledge that harm will result." *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) (citations and internal alterations omitted). Under this standard, a mere disagreement between an inmate and a physician over the appropriate level of care does not establish an Eighth Amendment violation absent exceptional circumstances. *Id.* Moreover, even if the requisite subjective knowledge is established, an official may avoid liability if the official "responded reasonably to the risk, even if the harm ultimately was not averted." *See Farmer v. Brennan*, 511 U.S. 825, 844 (1994).

The record does not support Resper's claims that Defendants acted with deliberate indifference to his chronic venous stasis ulcer or his reported pain. The Defendants do not contend that Resper's wound or chronic pain did not constitute a serious medical condition. However, the evidence does not support a finding that Defendants acted with an intent to cause harm. Rather, the records demonstrate a sincere and reasonable effort to address Resper's medical problems.

Resper's analgesic pain medication was discontinued because he was hoarding the medication, a fact he does not dispute, but rather seeks to explain. Shortly after that medication

14

was stopped he was provided other analgesic medication, which was adjusted over time and in consult with his various medical providers. Additionally, he was provided medical devices to treat both his underlying medical issue and relieve the associated pain. He was also referred to a wound care expert and to a pharmacist for consultation on pain management. In sum, he was evaluated consistently and repeatedly by nurses, physician's assistants, doctor's and specialists. The failure to provide Resper prescribed medication, Plavix, at best is a claim of negligence as none of the named providers were aware that Resper had not received the medication given his failure to advise them in person or by filing a sick call slip.

Viewing the evidence in the light most favorable to Resper, the Court cannot find that any of the Defendants were deliberately indifferent to his needs. Defendants continuously evaluated Resper's condition and resulting pain. None of the Medical Defendants' decisions regarding Resper's care amounted to an act or omission "for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. As previously indicated, "[d]isagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 198)). Nor does Resper demonstrate that any delay in responding to sick calls or in the alteration of his pain medication, due to his failure to take the medication as prescribed, exposed him to a serious or significant injury. *See Brown v. Comm'r of Cecil Cty. Jail*, 501 F. Supp. 1124, 1126 (D. Md. 1980) (stating that delay "does not violate the Eighth Amendment where the seriousness of the injury is not apparent").

Where Defendants and other medical providers gave regular attention to Resper's medical conditions the Court concludes that the record, even viewed in the light most favorable to Resper, does not support a finding that they acted with deliberate indifference to his medical needs. In

15

sum, Resper has not shown that the Defendants exhibited a callous disregard for his serious medical need, *see Estelle*, 429 U.S. at 105-06.  Resper's mere disagreement with the course of treatment provided is insufficient to state an Eighth Amendment claim.  Accordingly, the Court concludes that there is no genuine issue of material fact on Resper's Eighth Amendment claims, and the Court will grant the Defendants' Motion as to these claims.  The Court need not and does not address Defendants' remaining arguments.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss or Alternatively, for Summary Judgment is  granted.  The Complaint is dismissed as to Warden Richard Graham, Jr. A separate Order shall issue.

Date: April 1t, 2021

PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE